IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIS GELPI | : | CIVIL ACTION |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 15-1974 |

**MEMORANDUM**

**Padova, J.**                                                                                                **April 27, 2016**

      Following an alleged warrantless search of his home, Plaintiff commenced this action against the City of Philadelphia (the "City") and seven police officers, asserting state law tort claims and statutory claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988.  The City moves to dismiss the claims against it, for failure to state claims upon which relief can be granted.  For the following reasons, we grant the City's Motion in part and dismiss the Motion as moot in part.

**I.**   **BACKGROUND**

      The First Amended Complaint ("Amended Complaint") alleges the following facts. Plaintiff Luis Gelpi is a Philadelphia resident.  (Am. Compl. ¶ 15.)  In February or March 2013, Plaintiff's brother, Juan Gelpi, was wanted by the Philadelphia Police on allegations of aggravated assault and related charges.  (Id. ¶¶ 16, 20.)  Police officers repeatedly visited Plaintiff's home looking for his brother.  (Id. ¶ 21.)  Each time, Plaintiff and his wife advised the police officers that Juan Gelpi did not reside at that address.  (Id. ¶ 22.)  Despite Plaintiff's previous denials, in early May 2013, police officers again approached the Gelpis and searched their home with Mrs. Gelpi's permission.  (Id. ¶ 24.)  This search, like prior investigations, revealed no evidence that Juan Gelpi lived in or ever visited the home.  (Id. ¶ 25.)

On May 8, 2013, the seven police officers named as defendants in this action again visited the Gelpi home looking for Juan Gelpi. (Id. ¶ 26.) Plaintiff demanded that the police officers produce a warrant or otherwise leave the family alone. (Id. ¶ 27.) In response, one of the police officers ordered Plaintiff to "open the fucking door." (Id. ¶ 28.) Plaintiff again demanded to see a warrant. (Id. ¶ 29.) Instead of showing a warrant, the police officers broke the front door and entered the home. (Id. ¶ 30.) Two of the defendants, Officers William Redanauer and Thomas Iarosis, grabbed Plaintiff and threw him onto the floor. (Id. ¶ 31.) Officer Redanauer punched Plaintiff multiple times in the head, face, and back, and also twisted his arm, which was in a cast. (Id. ¶ 32.) At the same time, Officer Iarosis drove his knee into Plaintiff's back. (Id.) During this altercation, Plaintiff continued to ask for a warrant and warned the police officers that he intended to report the incident. (Id. ¶¶ 37-38.) Other police officers either did not intervene, despite observing the complained-of conduct, or were otherwise engaged in searching the home. (Id. ¶¶ 35-36.)

Throughout the altercation, Mrs. Gelpi pled with the officers to stop hitting Plaintiff. (Id. ¶ 33.) She attempted to explain that he was not Juan Gelpi. (Id. ¶ 34.) She also tried to present Plaintiff's driver's license to prove that he was not Juan. (Id.)

Eventually one of the officers realized that Plaintiff was not the individual that the police sought. (Id. ¶ 39.) Plaintiff again told the police officers that he would report them. (Id. ¶ 40.) In response, one of the defendants smiled and said, "that's why you got your ass beat." (Id. 41.) Plaintiff subsequently reported the incident to Internal Affairs. (Id. ¶ 43.) However, neither Internal Affairs nor the Philadelphia Police Department contacted him to discuss the incident. (Id. ¶ 44.)

Based on this incident, Plaintiff initiated this action against the City of Philadelphia and seven police officers in their official and individual capacities. Count 1 asserts that the City is liable pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988 for violating Plaintiff's Fourth and Fourteenth Amendment rights to be free from warrantless searches and seizures and to be free from the use of excessive force.[1]  Count 2 asserts that the City is liable pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988 for denying Plaintiff the right to free speech, as guaranteed by the First Amendment. Counts 3 and 4 assert the same claims, respectively, against the individually-named police officers. Counts 5 through 8 assert various state law claims against the named police officers.

The City moves to dismiss Counts 1 and 2 for failure to state claims upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  In his response to the Motion, Plaintiff has voluntarily withdrawn Count 2 of the Amended Complaint. Therefore, we consider the City's Motion only insofar as it pertains to Count 1.

## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."

---

[1] The title of this Count only references §§ 1983, 1985, and 1988. However, the body of the Count appears to assert claims under § 1981 as well. (Am. Compl. ¶ 55.) Reading the Amended Complaint in the light most favorable to the Plaintiff, we interpret Count 1 to be asserting claims under all four mentioned statutes.

[2] The City indicates, in two footnotes, that it is also moving on behalf of the individually-named officers in their official capacities. However, in spite of purporting to move on the individual defendants' behalf, the Motion and Memorandum never mention or offer argument regarding Counts 3 through 8, the only Counts in which the police officers are named as defendants. Accordingly, we do not read the Motion to actually seek dismissal of any claims asserted against the police officers.

Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

Count 1 asserts a claim against the City pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988 for depriving Plaintiff of his Fourth and Fourteenth Amendment rights to be free from warrantless searches and seizures and the use of excessive force.  Specifically, the Amended Complaint alleges that the policies and customs of the City deprived Plaintiff of his right to be secure in his person and property, as well as his right "to be free of unreasonable searches and seizures, unlawful detention, [and] warrantless searches except on probable cause," which are protected by the Fourth and Fourteenth Amendments.  (Am. Compl. ¶ 55.)  The City moves to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6) because the Amended Complaint does not allege facts to support a claim of municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

  A. Section 1983

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citation omitted).  In order to state a claim for relief under § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Id. (citations omitted).

5

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. Consequently, when a § 1983 claim is asserted against a municipality, a plaintiff must also demonstrate that his constitutional deprivations were caused by an official policy or custom of the municipality. Id.; Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). A municipal policy is a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) (quoting Monell, 436 U.S. at 690). A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bryan Cty., 520 U.S. at 404).

Significantly, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] custom" in the absence of a "conscious decision or deliberate indifference of some natural person." Simmons, 947 F.2d at 1063. It is therefore the plaintiff's burden "'to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.'" B.S. v. Somerset Cty., 704 F.3d 250, 274-75 (3d Cir. 2013) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). A policymaker is an official with "final, unreviewable discretion to make a decision or take an action." Andrews, 895 F.2d at 1481 (discussing City of St. Louis v. Praprotnik, 485 U.S. 112, 139-40 (1988)). Accordingly, to state a Monell claim upon which relief can be granted, a complaint must include the identity of the municipal entity's final policymaker. See Santiago v. Warminster Twp., 629 F.3d 121, 135 & n.11 (3d Cir. 2010) (requiring the plaintiff to "plead in some fashion" the identity of an individual with "final policy making authority, as that is a key element of a Monell claim"); see

6

also Simmons, 947 F.2d at 1062 (stating that a Monell plaintiff must "identify officials with ultimate policymaking authority in the area in question" (discussing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989))).

Here, the City argues, inter alia, that Count 1 of the Amended Complaint should be dismissed because the Amended Complaint fails to identify a municipal policymaker, as required by Monell.  Indeed, at no point in the Amended Complaint is a policymaker identified.[3] Moreover, while Plaintiff argues in his response to the City's Motion that he has adequately alleged that the City has a policy or custom of repeatedly executing warrants on a single location without safeguards, oversite, or monitoring, he again fails to identify any individual policymaker allegedly responsible for this purported policy or custom.  In the absence of any allegation as to the identity of the relevant policymaker, we conclude that the Amended Complaint fails to assert a cognizable claim against the City of Philadelphia pursuant to Monell.[4]  Consequently, we grant the City's Motion to Dismiss Count 1 insofar as it asserts a claim pursuant to § 1983.

B.    Section 1981

Section 1981 provides, in pertinent part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be

---

[3] The Amended Complaint includes a stray reference to "Defendant[] . . . Ramsey," which we assume is a reference to the former Philadelphia Police Commissioner, Charles Ramsey. (Am. Compl. ¶ 54.) However, Ramsey is not a defendant in this case, is never even identified by his full name in the Amended Complaint, and is never alleged to have had policymaking authority. Under these circumstances, in spite of Ramsey's former position, we do not read the Amended Complaint to allege that he is the policymaker for purposes of Plaintiff's Monell claim.

[4] Because we are resolving the Motion on this basis, we need not discuss the City's other arguments for dismissal.

7

> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981(a). Generally, to state a claim under § 1981, a plaintiff must plausibly allege the following elements: "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (alteration in original) (quotation omitted). Here, the Amended Complaint does not allege that Plaintiff is a member of a racial minority, much less that the City intended to discriminate against him based on his race. Furthermore, even if the Amended Complaint included such allegations, it cannot state a § 1981 claim against the City "because a private cause of action cannot be asserted against a municipal [actor] for a violation of § 1981." Lande v. City of Bethlehem, 457 F. App'x 188, 193 (3d Cir. 2012) (citation omitted). Indeed, "'§1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981.'" McGovern v. City of Philadelphia, 554 F.3d 114, 121 (3d Cir. 2009) (quoting Jett, 491 U.S. at 733). We therefore grant the City's Motion to Dismiss Count 1 insofar as it asserts a cause of action pursuant to § 1981, and we dismiss the § 1981 claim in Count 1 on this basis.

    C.    Section 1985

Section 1985(3) provides a private right of action for an individual who has been injured by a conspiracy of two or more persons to deprive him of "the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). In order to state a cognizable claim pursuant to § 1985(3), a complaint must plausibly allege the following elements:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of person [of] the equal protection of the laws; (3) an act in furtherance of the

> conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); and Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). Significantly, "'[t]he [statutory] language requiring intent to deprive of equal protection . . . means that there must be some racial . . . invidiously discriminatory animus behind the conspirators' action.'" Scott, 463 U.S. at 835 (quoting Griffin, 403 U.S. at 102).

Here, the Amended Complaint does not allege that Plaintiff is a member of a specific race or that he is a member of any other class for the purposes of equal protection. In addition, the Amended Complaint does not allege that the City was motivated by any particular animus, let alone a racial or class-based animus. Because of this deficiency, we grant the City's Motion to Dismiss Count 1 insofar as it asserts a claim pursuant to § 1985, and we dismiss Count 1's § 1985 claim on this basis.

D.  Section 1988

Section 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of sections 1981, . . . 1983, [and] 1985 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. 1988(b). However, when the Amended Complaint fails to state a viable claim pursuant to §§ 1981, 1983, or 1985, "Plaintiff's claim under Section 1988 must also fail." Moyer v. Borough of N. Wales, Civ. A. No. 00-1092, 2000 WL 875704, at *5 (E.D. Pa. June 22, 2000); see also Hightower v. City of Philadelphia, Civ. A No. 95-4490, 1995 WL 678661, at *5 (E.D. Pa. Nov. 13, 1995) (explaining that § 1988 "creates no independent cause of action; it merely complements the various acts which do create federal causes of action for the violation of federal civil rights," and "[t]hus, plaintiffs' right to recover attorney's fees under § 1988 depends

on whether they have stated a claim under § 1983" or other acts that create federal causes of action (citation omitted)). Because Plaintiff's §§ 1981, 1983, and 1985 claims have all been dismissed, we similarly grant the City's Motion to Dismiss Count 1 insofar as it asserts a claim to attorney's fees pursuant to § 1988. Consequently, we dismiss Count 1's claim pursuant to § 1988 on this basis.

### IV. CONCLUSION

For the foregoing reasons, we grant the City's Motion to Dismiss Count 1 of the Amended Complaint. As Plaintiff has voluntarily withdrawn Count 2, the only other claim against the City, we dismiss the City of Philadelphia as a party to this action. An appropriate Order follows.

BY THE COURT:

/s/John R. Padova
John R. Padova, J.